IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-04-909-F |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff William Smith seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). Based on an erroneous residual functional capacity ("RFC") determination, the Court should reverse and remand for further proceedings in the SSA.[1]

I.   BACKGROUND

Mr. Smith applied for insurance benefits ("DIB") based on an alleged disability. Administrative Record at pp. 333-36 (certified Aug. 24, 2004) ("Rec.").[2] The SSA denied the application initially and on reconsideration. *Id.* at pp. 281, 313. A United States administrative law judge conducted a hearing, applied the five-step process mandated under

---

[1]   The Court has referred the action to the undersigned for findings and recommendations on dispositive matters. Order Referring Matter to United States Magistrate Judge (July 22, 2004).

[2]   Mr. Smith was awarded DIB in May 1990. *See* Rec. at pp. 266-72. But these benefits ended in February 1996 when he went to prison. *See id.* at pp. 295-96.

20 C.F.R. § 404.1520(b)-(f), and rejected the application at the fifth step. *Id.* at pp. 19-24 (decision), pp. 669-716 (hearing).[3]

The Appeals Council declined jurisdiction,[4] and the present action followed. Mr. Smith alleges: (1) a failure to develop the record concerning his mental impairment, (2) a lack of substantial evidence to support the RFC determination, (3) an erroneous analysis of credibility and pain, and (4) a lack of substantial evidence to support the step five finding. Opening Brief of Plaintiff, William A. Smith at pp. 4-12 (Nov. 23, 2004) ("Plaintiff's Brief").

II.   STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th

---

[3]   At step one, the judge found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 31, 1997. Rec. at pp. 20, 23.

At step two, the administrative law judge found that Mr. Smith had a severe impairment involving an amputation of the left leg. *Id.* at pp. 21, 23.

At step three, the judge found that the Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing". *Id.*

At step four, the judge determined that Mr. Smith retained the RFC to perform sedentary and light work, compromised by difficulty with climbing, stooping, crouching, and crawling. *Id.* at pp. 22, 24. Based on this RFC assessment, the judge determined that Mr. Smith could not perform his past relevant work. *Id.*

At step five, the administrative law judge determined that the Plaintiff could successfully adjust to work existing in significant numbers in the national economy. *Id.* at p. 23. Thus, at step five, the judge determined that Mr. Smith was not disabled. *Id.* at pp. 23-24.

[4]   Rec. at pp. 11-13.

Cir. 2004). If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("if the [administrative law judge] failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence").

III.  THE ADMINISTRATIVE LAW JUDGE PROPERLY DEVELOPED THE RECORD

According to Mr. Smith, the administrative law judge failed to develop the record concerning his mental health. Plaintiff's Brief at pp. 4-7, 11. Mr. Smith contends that in light of evidence relating to a mental impairment, the administrative law judge should have ordered a consultative examination or called a medical expert to testify. *Id.*[5] The Court should reject this argument.

A.  Duty to Develop the Record

The administrative law judge must develop an adequate record relevant to the issues raised even when the claimant is represented by counsel. *See Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). This duty requires the administrative law judge to inform himself about "facts relevant to his decision and to learn the claimant's own version of those facts." *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

---

[5]  In his request for relief, Mr. Smith urged a consultative examination by an orthopedist, as well as a mental health expert. Plaintiff's Brief at p. 12. But in the body of his brief, the Plaintiff advocated a consultative examination based solely on a mental impairment. *Id.* at pp. 4-7, 11.

But the administrative law judge "does not have to exhaust every possible line of inquiry," as "[t]he standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d at 1168.

### B. Ordering of a Consultative Examination

The administrative law judge did not err by declining to order a consultative examination.

The judge could have ordered a consultative examination if he had deemed it necessary for development of the record. *See* 20 C.F.R. § 404.1519a (2004); *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). An examination should be ordered if "evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

Mr. Smith alleged an onset date of January 31, 1997. *See* Rec. at p. 333; *supra* note 3. Thus, the relevant period began at that time and ended when Mr. Smith's insured status expired, which was September 30, 1997. *See Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1349 (10th Cir. 1990) (*per curiam*) (to qualify for DIB, the claimant must have had a disability "prior to the expiration of [his] insured status"); *see also* Rec. at p. 341 (stating that the claimant was last insured on September 30, 1997).[6]

---

[6] The administrative law judge stated that his findings were "through the date of this decision," which was January 30, 2004. Rec. at p. 24. But the findings about the Plaintiff's condition after September 30, 1997, were irrelevant to his qualification for DIB. *See supra* text accompanying note.

At the administrative hearing, Mr. Smith testified that he "had three nervous breakdowns while [he] was locked up." Rec. at p. 684. But there is no evidence of any such episodes during the relevant period.

The first Department of Corrections mental health record, dated March 25, 1998, reflects admission to the mental health unit at the Joseph Harp Correctional Center. *Id.* at p. 452. But this entry was not accompanied by any diagnosis or explanatory findings. Subsequently, the record contains detailed evidence of two episodes related to Mr. Smith's mental health in October 1999 and July 2001. *See id.* at pp. 441-42, 464-77, 480-84. But between January 31, 1997, and September 30, 1997, Mr. Smith only sought medical treatment in relation to his left leg prosthesis. *See id.* at p. 457.[7]

In part, the administrative law judge reasoned that the evidence of a mental impairment was largely outside of the relevant time-period. *See* Rec. at p. 22; *see supra* p. 4. Because Mr. Smith was incarcerated,[8] the record of mental health treatment was complete.[9]

---

[7] During the administrative hearing, the Plaintiff's attorney stated that in the "late 1980s," Mr. Smith had seen "a whole bunch of psychiatrist [sic] and psychologists." Rec. at p. 681. The record confirms that in November 1986, the Plaintiff had undergone mental health examinations in relation to a worker's compensation claim. *See id.* at pp. 218-30. And in 1990, Mr. Smith was evaluated. *See id.* at pp. 246-48. But the Plaintiff's counsel did not argue that these examinations had related to Mr. Smith's mental health in 1997. The administrative law judge properly discounted the evidence because it was not relevant to the period under consideration. *Id.* at p. 22; *see infra* p. 6.

The Plaintiff also cites incidents involving his mental health which had occurred in October 2001, June 2002, April 2003, and May 2003. Plaintiff's Brief at pp. 4-6; *see* Rec. at pp. 413-17, 530, 543-56. But this evidence also involves conditions suffered outside of the relevant time-frame. As a result, the judge properly discounted this evidence. Rec. at p. 22; *see infra* p. 6.

[8] *See*, *e.g.*, Rec. at p. 672 (statement by Mr. Smith's attorney).

[9] *See* Rec. at pp. 419-521, 565-668.

This record contained evidence of a mental impairment, but not within the relevant time-period. As a result, the administrative law judge had no duty to order a consultative examination. *See Butler v. Barnhart*, 347 F. Supp. 2d 1116, 1122 (M.D. Ala. 2003) (administrative law judge was not required to order a consultative mental examination in the absence of any objective medical evidence relating to a mental impairment during the relevant time-period). Indeed, a consultative examination in 2004 would not have shown whether Mr. Smith had suffered from a mental impairment in 1997.[10]

### C.   Calling of a Medical Expert

Likewise, the administrative law judge was not required to call a medical expert to develop the record. The decision to call a medical expert is discretionary. *See* 20 C.F.R. § 404.1527(f)(2)(iii) (2004) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) . . . ."). But the Plaintiff cannot point to ambiguities in the record which would have required a medical expert. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995).

---

[10]   *See Butler v. Barnhart*, 347 F. Supp. 2d 1116, 1122 (M.D. Ala. 2003) (holding that a consultative examination in 2002 "would not, *per se*, be probative of [the claimant's] physical state at the time of his alleged disability [between March 1990 and December 1995]"); *see also Wahid v. Barnhart*, Case No. CIV-03-427-T (W.D. Okla. July 19, 2004) (report and recommendation by Argo, J.) (concluding that the administrative law judge did not err in failing to order a consultative mental examination in part because the relevant period had ended two years before the administrative hearing), *adopted* (W.D. Okla. Aug. 19, 2004) (order by Thompson, J.).

A similar issue arose in *Adame v. Apfel*, 4 Fed. Appx. 730, 2001 WL 193820 (10th Cir. Feb. 27, 2001) (unpublished op.).  There the plaintiff claimed a disability beginning in 1979, and his insured status expired on September 30, 1988.  *See Adame v. Apfel*, 4 Fed. Appx. at 731, 2001 WL 193820, Westlaw op. at 1.  In 1993, he was diagnosed for the first time with post-traumatic stress disorder.  *See id.*, 4 Fed. Appx. at 731-32, 2001 WL 193820, Westlaw op. at 1-2.  The administrative law judge denied benefits, stating that the plaintiff was not disabled before his insured status had ended.  *See id.*, 4 Fed. Appx. at 731, 2001 WL 193820, Westlaw op. at 1.  The Tenth Circuit Court of Appeals upheld the decision, concluding that a medical expert was unnecessary.  *Id.*, 4 Fed. Appx. at 734-35, 2001 WL 193820, Westlaw op. at 4.  The plaintiff had post-traumatic stress disorder, but the record contained no evidence that it had preceded the expiration of his insured status.  The appellate court explained:

> "[A] medical advisor need be called only if the medical evidence of onset is ambiguous."   Here, the medical evidence is not ambiguous, it is just nonexistent.  Therefore, considering that a medical expert would be required to review the evidence and render a retroactive opinion, he or she could do nothing more than infer that because prior to September 30, 1988, [the plaintiff] suffered from drug addiction and had trouble holding a job, and because in 1993 he exhibited the symptoms of severe [post-traumatic stress disorder], he must have had [post-traumatic stress disorder] prior to September 30, 1988.  Even if this inference could be accepted as true, it still does not answer the question of whether [the plaintiff's] [post-traumatic stress disorder] was disabling prior to September 30, 1988.

*Id.*, 4 Fed. Appx. at 734-35, 2001 WL 193820, Westlaw op. at 4 (citation omitted).

*Adame v. Apfel* is persuasive because of the similarity in facts. *See* Tenth Cir. R. 36.3(B). In both *Adame* and the present case, the plaintiff had an ailment, but the record contained no evidence that it had existed during the period in question. In these circumstances, a medical expert was unnecessary in *Adame* and the same is true here.

D.   Summary

The Court should reject the Plaintiff's argument in light of: (1) the absence of objective medical evidence relating to a mental impairment during the relevant period, (2) the lapse of time between the expiration of the Plaintiff's insured status and the administrative hearing, and (3) the adequacy of the existing record.

IV.   STEP FOUR

At step four, the administrative law judge made the following RFC determination: "Accordingly, the undersigned finds that the claimant retains the residual functional capacity for sedentary and light work, compromised by difficulty with climbing, stooping, crouching, and crawling." Rec. at p. 22. Mr. Smith argues that the administrative law judge had committed reversible error at step four by failing to cite any evidentiary support for this conclusion. *See* Plaintiff's Brief at pp. 9-11.[11] Mr. Smith is correct.

At the fourth step of the disability determination, the administrative law judge should assess the claimant's RFC in detail. *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir.

---

[11] Within this argument, the Plaintiff alleges insufficient evidence for the finding that the past relevant work included employment as a "chipper operator." Plaintiff's Brief at pp. 9-10. But the Court need not address this argument, as the administrative law judge did not conclude that Mr. Smith could perform his past relevant work. *See* Rec. at pp. 22-24; *supra* note 3.

1996).  This assessment must be based on all of the relevant evidence, including medical history, laboratory findings, the effects of treatment, symptoms, lay evidence, and medical source statements.  *See* Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, Westlaw op. at 5 (July 2, 1996).  The judge must make specific findings as to the RFC, and these findings must be supported by substantial evidence.  *See id.*  The assessment must include a sufficient narrative discussion describing how the evidence supports each conclusion.  *See id.*, 1996 WL 374184, Westlaw op. at 7.

At the administrative hearing, Mr. Smith testified concerning his physical limitations. Rec. at pp. 679-80, 689-94.  In 1985, the Plaintiff's left leg was amputated below the knee. *See id.* at p. 680.  According to Mr. Smith, the prosthesis caused his hips to be out of alignment.  *Id.* at p. 689.  As a result, the Plaintiff testified that he could walk "[a]bout a block," stand for approximately ten minutes, and sit for approximately fifteen minutes before his back began to hurt.  *Id.* at 690.  Mr. Smith also testified that due to a prior injury, "[l]ifting, or just moving" caused intermittent dislocation of his right shoulder.  *Id.* at p. 680. The administrative law judge cited this testimony, but discounted the Plaintiff's credibility without reference to any other evidence to support the RFC findings.  *Id.* at pp. 19-24. Absent such references, the administrative law judge lacked evidentiary support for his RFC determination and the Court should reverse and remand for further proceedings.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (reversing because of the lack of substantial evidence to support the administrative law judge's RFC determination).

V.   THE PLAINTIFF'S REMAINING ALLEGATIONS OF ERROR

The Plaintiff also challenges the administrative law judge findings regarding credibility, pain, and step five. Plaintiff's Brief at pp. 8-12. The suggested remand would entail a reevaluation of the RFC, which could affect all of these findings. As a result, the Court need not address the Plaintiff's challenges to the findings involving pain, credibility, and step five.[12]

VI.   RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should reverse and remand for reconsideration of Mr. Smith's RFC.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1) (2000). The deadline for objections is May 11, 2005. *See* W.D. Okla. LCvR 72.1(a). The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

---

[12]   *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of this case on remand."); *see also Dyer v. Shalala*, 52 F.3d 337, 1995 WL 228265, Westlaw op. at 3 (10th Cir. Apr. 17, 1995) (unpublished op.) (declining to address the claimant's allegation involving disregard of subjective complaints in light of a remand for consideration of established impairments).

VII.   STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

Entered this 21st day of April, 2005.

_____
Robert E. Bacharach
United States Magistrate Judge